# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# EASTERN DIVISION

CHARLES P. WITCHER                                                                    PLAINTIFF

v.                              Case No. 2:18-cv-00022-KGB

TEAMCARE, a Central States
Health Plan                                                                            DEFENDANT

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by defendant TeamCare, a Central States Health Plan ("Central States") (Dkt. No. 14). Plaintiff Charles P. Witcher failed to respond timely to the motion, but Mr. Witcher did file a belated response (Dkt. No. 16). Central States replied (Dkt. No. 17). The Court issued a short Order granting summary judgment (Dkt. No. 18), and the Court now enters this Opinion and Order stating its reasons.

### I.     Factual Background

#### A.     Undisputed Material Facts

Central States filed a statement of material facts (Dkt. No. 14-1). Mr. Witcher did not respond to, or dispute any allegations in, the statement. Therefore, the Court adopts Central States' statement of material facts as the undisputed facts in this case. The Court does not repeat those facts here but incorporates them by reference.

#### B.     Summary Of Claim

Central States operates throughout the United States under the trade name TeamCare (*Id.*, ¶ 1). Central States is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, and is established as an Illinois trust (*Id.*, ¶¶ 2-3). Mr. Witcher was covered by Central States' Retiree Plan after his retirement on June 30, 2008 (*Id.*, ¶ 4). Prior to his retirement, Mr. Witcher and his spouse, Vicki

Witcher, were covered by Central States' Active Plan while Mr. Witcher was an active employee of United Parcel Service ("UPS") (*Id.*). Mr. Witcher was the Covered Participant, and Ms. Witcher was the Covered Dependent (*Id.*, ¶ 5). When he retired on June 30, 2008, Mr. Witcher elected coverage only for himself (*Id.*).

Mr. Witcher alleges that Central States denied payment of his medical expenses, in violation of § 502(a)(1)(B) of ERISA (Dkt. No. 3, ¶¶ 7-8). *See* 29 U.S.C. § 1132(a)(1)(B). Mr. Witcher claims that this provision permits him as a plan participant to bring an action "to recover benefits due to him under the terms of his plan" and also "to enforce his rights under the terms of the plan." (Dkt. No. 3, ¶ 8). Specifically, Mr. Witcher alleges that he was a member of the Central States Health Plan and that, on or about January 3, 2005, one of the individuals covered by the Central States Health Plan, Ms. Witcher, was in an automobile accident (*Id.*, ¶ 4). Mr. Witcher alleges that Central States "refused to pay a single claim of the Plaintiff's after May of 2011" and that Central States claimed a subrogation lien in the amount of $9,728.85 (*Id*., ¶ 6).

Central States maintains that it paid medical bills of $9,728.85 on behalf of Ms. Witcher as a result of the accident (Dkt. No. 15, at 1). Ms. Witcher, through her attorney, settled a third-party claim against the party responsible for the accident in the amount of $50,000.00 (*Id.*, at 1-2). After this recovery, Ms. Witcher refused to reimburse Central States based upon her attorney's assertion that the "make whole" defense applied regarding Central States' subrogation lien (*Id.*, at 3).

Mr. Witcher retired on June 30, 2008, and elected coverage for himself under Central States' Retiree Plan (*Id*., at 2). Because neither Mr. Witcher nor his spouse reimbursed Central States in the amount of its subrogation lien, Central States placed an overpayment against Mr. Witcher's Retiree Plan health and welfare coverage (*Id.*). According to Central States, until the

2

overpayment was collected, Mr. Witcher's coverage was suspended, and his current claims were not paid (*Id.*). Central States sent a letter to Mr. Witcher on May 26, 2011, along with pertinent provisions of the Active Plan Document, that explained Central States' decision and the basis for that decision in the Active Plan Document language (Dkt. No. 13-4). The letter also advised Mr. Witcher of his right to appeal the determination (*Id.*).

In pertinent part, the May 26, 2011, letter put Mr. Witcher on notice of the Claim of the Health and Welfare Fund ("Fund") for recovery of its subrogation rights in the amount of $9,728.85 (Dkt. No. 13-4, at 1). Central States explained:

> The plan document basis of the Fund's Claim is Section 11.14 of the Active Plan Document which governs your obligations as a Covered Individual of the Fund. That provision, of which a copy is enclosed, states in part (emphasis added):
>
> "(e) If at any time, either before or after the Fund becomes vested with Subrogation Rights, <u>a Covered Individual directly or indirectly receives any Proceeds</u> as full or partial satisfaction of his Loss Recovery Rights, including arrangements for an annuity or other similar installment benefit plan, and including any payment or reimbursement of expenses (including attorneys' fees) incurred by or on behalf of the Covered Individual, <u>without prior written approval of an authorized Fund representative</u>, the Fund shall be vested with each of the following mutually independent rights:
>
> (1) <u>The right, at any time, to decline to make any payment for any benefits on behalf of the Covered Individual related to the Disability on which the Proceeds were based</u>;
>
> (2) <u>The right, at any time after the Fund becomes vested with Subrogation Rights, to decline to make any payment for any benefits on behalf of the Covered Individual, related to any circumstance or condition for which the Fund otherwise has a Coverage obligation, until the amount of such unpaid Coverage is equal to and offset by the unrecovered amount of the Fund's Subrogation Rights</u> . . . ."
>
> **Notice is hereby provided to you that the Fund has decided to exercise its right to decline to make any payment for any benefits on your dependent's behalf until the full amount of the Fund's Claim has been recovered by the Fund through denial of your dependent's benefit claims.**

> This decision by the Fund constitutes an adverse benefit determination upon your dependent's right to past, present, and future Coverage . . . .

(Dkt. No. 13-4, at 1-2) (emphasis in original). The letter explained the appeal process available to Mr. Witcher and enclosed portions of the Active Plan Document.

Central States sent a letter to Mr. Witcher on October 24, 2011, in response to an inquiry regarding coverage for Ms. Witcher, informing Mr. Witcher of the overpayment on file due to subrogation overpayment from a motor vehicle accident that occurred on June 27, 2008, and setting forth the language upon which Central States relied for the subrogation claim (Dkt. No. 13-5, at 52-53).

Central States set forth the following:

> The Fund, whenever it makes any payment for any benefits on behalf of a Covered Individual or other person related to any illness, injury or disability (collectively and separately "Disability") of the person, is immediately subrogated and vested with subrogation rights ("Subrogation Rights") to all present and future rights of recovery ("Loss Recovery Rights") arising out of the Disability which that person and his parents, heirs, guardians, executors, attorneys, agents and other representatives (individually and collectively called the "Covered Individuals") may have. The Fund's Subrogation Rights extend to all Loss Recovery Rights of the Covered Individual. The Loss Recovery Rights of the Covered Individual include, without limitation, all rights based upon any one or more of the following:
>
> If at any time, either before or after the Fund becomes vested with Subrogation Rights pursuant to this Section 11.14, a Covered Individual directly or indirectly receives any Proceeds as full or partial satisfaction of his Loss Recovery Rights, including arrangements for an annuity or other similar installment benefit plan, and including any payment or reimbursement of expenses (including attorneys' fees) incurred by or on behalf of the Covered Individual, without prior written approval of an authorized Fund representative, the Fund shall be vested with each of the following mutually independent rights:
>
>> (1) The right, at any time, to decline to make any payment for any benefits on behalf of the Covered Individual related to the Disability on which the Proceeds were based;
>>
>> (2) The right, at any time after the Fund becomes vested with Subrogation Rights, to decline to make any payment for any benefits on behalf of the Covered Individual, related to any

> circumstances or condition for which the Fund otherwise has a Coverage obligation, until the amount of such unpaid Coverage is equal to the unrecovered amount of the Fund's Subrogation Rights; and
>
> If you are dissatisfied with our decision, you have the right to file an appeal . . . .

(Dkt. No. 13-5, at 52-53).

Central States sent a letter to Mr. Witcher on March 14, 2016, that informed him of the Appeals Committee's decision to deny his request for a refund of his Retiree Health Coverage contributions, setting forth the language in the Plan upon which Central States relied for its decision (Dkt. No. 13-5, at 13-16). Central States explained that Mr. Witcher's "Retiree Health Coverage was suspended as of January 1, 2011, due to the existence of a Subrogation lien." (*Id.*, at 13).

Mr. Witcher took an administrative appeal for reimbursement of his Retiree Plan premiums, and the Central States Trustees considered and denied that appeal on August 16, 2016 (Dkt. No. 15, at 2). That decision was explained in an August 22, 2016, letter to Mr. Witcher (Dkt. No. 13-6). In the letter, Central States cited provisions in the Retiree Plan applicable to its actions (*Id.*). Central States maintains that the Trustees found that Mr. Witcher's medical coverage was properly suspended due to Central States' overpayment of benefits and that reimbursement of copayments made by Mr. Witcher during the period of suspension would interfere with Central States' right to recover its subrogation overpayment against Mr. Witcher (Dkt. No. 15, at 2-3). However, the Trustees agreed to waive the remaining subrogation lien overpayment of $2,180.51 and also to reinstate Mr. Witcher's health coverage effective August 16, 2016 (*Id.*, at 3).

In his current suit, Mr. Witcher requests equitable relief to remedy his losses (Dkt. No. 3, ¶ 7). He asserts that Central States should be liable for all out-of-pocket medical expenses he and

5

other individuals incurred that were covered under his plan during the time premiums were being paid and claims were being denied (*Id.*, ¶ 9). He also maintains that he should be reimbursed for all premiums he paid during the period of time that his coverage was suspended (*Id.*, ¶ 14). He asserts that he has exhausted all of his administrative appeals with Central States and that Central States continues to deny repayment of his premiums or coverage for his denied medical bills (*Id.*, ¶ 10).

As an initial matter, Central States maintains that Mr. Witcher's lawsuit is barred by the applicable statute of limitations (Dkt. No. 15, at 3). In the alternative, Central States maintains that, under an application of the ERISA abuse of discretion or arbitrary and capricious standard, the Central States Trustees had a reasonable basis to deny Mr. Witcher's administrative appeal (*Id.*). For these reasons, Central States asserts that summary judgment should be entered in its favor on Mr. Witcher's claims.

## II. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material

fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. Analysis

#### A. Statute Of Limitations

This Court previously examined the applicable statute of limitations when ruling on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss filed by Central States (Dkt. No. 10). Because ERISA contains no statute of limitations, courts must borrow the statute of limitations from the most analogous state law. *Cavegn v. Twin City Pipe Trades Pension Plan*, 223 F.3d 827, 828 (8th Cir. 2000). The Eighth Circuit Court of Appeals has found that actions for unpaid benefits under ERISA are analogous to contract claims, so the Court looks to the relevant statute of limitations governing contract claims. *Bennett v. Federated Mut. Ins. Co.*, 141 F.3d 837, 838 (8th Cir. 1998); *see Czech v. Unum Life Ins. Co. of Am.*, No. 09-1884, 2009 WL 5033961, at *4 (D. Minn. Dec. 15, 2009) (applying Minnesota's two-year statute of limitations governing contract actions). In Arkansas, the statute of limitations is three years for claims arising out of oral contracts and five years for claims arising out of written contracts. *See* Ark. Code Ann. § 16-56-105(1) (providing that statute of limitations for actions based upon oral contracts is three years); Ark. Code Ann. § 16-56-111(a) (providing that statute of limitations for actions based upon written contracts is five years).

Federal common law governs when Mr. Witcher's claim accrued; that is, when he could have sued Central States. "A cause of action for plan benefits under ERISA accrues when a plan

7

fiduciary has formally denied an applicant's claim for benefits or when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary." *Abdel v. U.S. Bancorp*, 457 F.3d 877, 880 (8th Cir. 2006) (internal quotations and citations omitted). The Eighth Circuit Court of Appeals has "given conflicting signals about [the accrual date.]" *Abdel*, 457 F.3d at 881. It has sometimes looked to the initial denial and other times to the denial of a timely appeal. *Id.* (citing *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 947, 949 (8th Cir. 2002) (finding that ERISA claim accrued at time of initial denial); *Mason v. Aetna Life Ins. Co.*, 901 F.2d 662, 664 (8th Cir. 1990) (finding that ERISA claim accrued at time of exhaustion of remedies under the covered plan)). Other district courts have interpreted this line of cases as holding that ERISA claims accrue at the time most favorable to the plaintiff. *See Forciea v. Fortis Benefits Ins. Co.*, No. 08-cv-2291, 2009 WL 2925524, at *3 (D. Minn. Sept. 8, 2009).

Based on the undisputed facts before the Court, Central States sent correspondence to Mr. Witcher on May 26, 2011, informing him that, due to the $9,728.85 overpayment made by Central States, Mr. Witcher's claims would not be paid (Dkt. No. 15, at 16-17). Central States informed Mr. Witcher that it opted to exercise its rights under its Plan's subrogation rules to decline to make any payment of his otherwise covered medical bills until the full amount of the overpayment had been recovered (*Id.*, at 17). According to Central States, it explained to Mr. Witcher that its decision constituted an adverse benefit determination that Mr. Witcher had a right to appeal and, thus, to file a § 502(a)(1)(B) civil enforcement action (*Id.*). Central States maintains that, because Mr. Witcher's claim accrued in May 2011, the statute of limitations expired in May 2016, and Mr. Witcher's current lawsuit filed on August 18, 2017 (Dkt. No. 2, at 1), in Arkansas state court and removed by Central States to this Court is time-barred (Dkt. No. 15, at 17). This is true if the

Court determines that Mr. Witcher's cause of action accrued at the time of the initial denial, when Central States sent its May 26, 2011, letter.

However, Mr. Witcher's claim is not time-barred if the Court determines that his cause of action accrued at the time of the denial of his timely appeal of the initial denial. The undisputed facts confirm that Mr. Witcher filed an appeal of the overpayment through Central States' administrative appeals process (Dkt. No. 14-1, ¶ 54). The Central States Appeals Committee heard Mr. Witcher's appeal on March 9, 2016, and denied the appeal, noting that Mr. Witcher had elected Retiree Plan coverage only for himself at the rate of $200.00 per month (*Id*., ¶ 55). By that time, the overpayment had been reduced to $4,488.86 (*Id.*).

Then, Mr. Witcher's final appeal was denied by the Central States Trustees on August 16, 2016 (*Id.*, ¶ 58). The Trustees denied Mr. Witcher's request that he be reimbursed for the Retiree Plan premiums that he had paid to Central States during the period of time his coverage was suspended (*Id.*). The Trustees noted that the original overpayment had been properly authorized because Mr. Witcher refused to repay Central States' subrogation lien for the benefits paid on behalf of his wife (*Id.*). At that time, the overpayment was reduced to $2,180.51 by applying otherwise compensable claims to the overpayment (*Id.*). At the time of the final appeal, the Trustees decided to reinstate Mr. Witcher's health coverage effective August 16, 2016, and waive the remaining overpayment of $2,180.51 so that Mr. Witcher's Retiree Plan coverage was reinstated after that date (*Id.*, ¶ 59). If Mr. Witcher's claim accrued at the time of Central States' denial of his appeal, because Mr. Witcher filed his current lawsuit on August 18, 2017 (Dkt. No. 2, at 1), Mr. Witcher timely filed. This is the position Mr. Witcher advocates in his response to Central States' motion for summary judgment (Dkt. No. 16, ¶ 4).

9

In support of its argument, Central States cites *Pilger v. Sweeney*, 725 F.3d 922, 925-26 (8th Cir. 2013). In this Court's view, the case does not squarely resolve this issue. With respect to the denial of benefits and the timeliness of plaintiffs' claims, the *Pilger* court stated that the limitations period "begins to run when the claim for benefits is denied." *Id.*, at 926. The court then observed that "Defendants decided to apply the $1.05/hour rate to Plaintiffs' past service on August 1, 1999, and Defendants denied Plaintiffs' appeal of this decision on July 14, 2000. Plaintiffs did not file the instant lawsuit until February 15, 2011, more than ten years later." *Id.* As a result, the *Pilger* court determined that claim was time-barred. *Id.* Based upon these facts, regardless of whether plaintiffs' claims accrued on the initial date benefits were denied or the date defendants denied plaintiffs' appeal of the initial denial, the *Pilger* plaintiffs' claims were filed more than ten years later and were time-barred.

Due to this uncertainty with respect to the accrual date of his cause of action, the Court will proceed to examine the merits of Mr. Witcher's claim.

### B. Trustees' Denial Of Administrative Appeal

#### 1. Level Of Review

The Court generally reviews a plan administrator's denial of ERISA benefits *de novo*. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). If "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *id.,* the district court reviews a plan administrator's denial of ERISA benefits for an abuse of discretion, *see Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 986-87 (8th Cir. 2014); *Tussey v. ABB, Inc.,* 746 F.3d 327, 333 (8th Cir.), *cert. denied,* ––– U.S. –––, 135 S. Ct. 477 (2014).

The Court, having reviewed the undisputed facts, agrees with Central States that the abuse

of discretion or arbitrary and capricious standard applies to this Court's review of the denial of Mr. Witcher's administrative appeal for reimbursement of his Retiree Plan premiums paid during the period of time that his coverage with Central States was suspended due to Central States' subrogation lien. The language of the plan documents here vests the ERISA plan administrators with discretionary authority to construe plan terms (Dkt. No. 15, at 6-7). As a result, the Court will not overturn the administrators' decision unless it constitutes an abuse of discretion. *Bruch*, 489 U.S. at 111; *Rutledge v. Liberty Life Assurance Co. of Boston*, 481 F.3d 655, 659 (8th Cir. 2007). "This highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of [an ERISA] plan." *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (quotation and citation omitted) (alteration in original). Courts review only a plan administrator's "final claims decision, [and] not the initial denial letter, to ensure development of a complete record." *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016) (citing *Khoury*, 615 F.3d at 952).

When reviewing for abuse of discretion, this Court examines whether the plan administrator's decision "'was supported by substantial evidence, meaning more than a scintilla but less than a preponderance.'" *Midgett v. Wash. Grp. Int'l Long Term Disability Plan,* 561 F.3d 887, 897 (8th Cir. 2009) (quoting *Schatz v. Mut. of Omaha Ins. Co.,* 220 F.3d 944, 949 (8th Cir. 2000)). Because the Court's review focuses on whether the administrator's decision was supported by substantial evidence in the materials considered by the administrator, under controlling law, courts generally limit the record on appeal to the record before the plan administrator. *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 830 (8th Cir. 2014).

A decision "supported by a reasonable explanation . . . should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (internal quotation marks

omitted). Even with the great deference afforded, an administrator cannot simply ignore relevant evidence or "'arbitrarily refuse to credit a claimant's reliable evidence.'" *See Willcox v. Liberty Life Assurance Co.,* 552 F.3d 693, 701 (8th Cir. 2009) (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003)). The Eighth Circuit Court of Appeals identifies five factors that bear on the reasonableness of a plan administrator's interpretation: (1) whether the interpretation contradicts the plan's clear language; (2) whether the interpretation renders any plan language internally inconsistent or meaningless; (3) whether the interpretation is consistent with earlier interpretations; (4) whether the interpretation is consistent with the plan's goals; and (5) whether the plan satisfies ERISA requirements. *Kennedy v. Georgia-Pacific Corp.,* 31 F.3d 606, 609 (8th Cir. 1994); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir. 1992).

Generally, these same standards apply, even if the Court looks to controlling law from the Seventh Circuit Court of Appeals as it is undisputed that this ERISA plan is established as an Illinois trust. *See Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 728 (7th Cir. 2012) (determining that, when the ERISA plan confers discretionary authority and deferential review is applied, the court limits its review only to evidence presented to the plan administrator); *Davis v. UNUM Life Ins. Co. of Am.*, 444 F.3d 569, 576 (7th Cir. 2006) (determining that, when the ERISA plan confers discretionary authority, deferential review and the arbitrary-and-capricious standard apply); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 981 (7th Cir. 1999) (same); *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999) (examining appropriate level of review under abuse of discretion standard); *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir. 1995) (determining that, under the arbitrary and capricious standard, "any questions of judgment" are left to the plan administrator); *Russo v.*

*Health, Welfare & Pension Fund, Local 705, Int'l. Bhd. Of Teamsters*, 984 F.2d 762 (7th Cir. 1993) (same).

A plan administrator has a conflict of interest when the administrator holds the dual role of making benefit determinations and paying benefit claims. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). Where a conflict of interest exists, courts apply the abuse of discretion standard but take the conflict into account "as a factor in determining whether the plan administrator has abused its discretion in denying benefits." *Id.* The significance of the factor depends upon the circumstances of the particular case. *Id.* Mr. Witcher does not argue that Central States' role impacted its decision. Regardless, the Court is still required to give such a conflict, if it exists, some weight. *Khoury*, 615 F.3d at 953. The Court has reviewed the record evidence, specifically the Trust Agreement (Dkt. No. 13-1). The Court determines that, to the extent any conflict exists, it is entitled to little weight.

There is no basis to alter the standard of review based on an alleged conflict of interest under controlling law or procedural irregularity. *See Manny v. Central States, Se. & Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004); *Central States, Se. & Sw. Areas Pension Fund v. Bulk Transport Corp.*, No. 13 C 9112, 2015 WL 5438849, at *7 (N.D. Ill. June 24, 2015); *Hasty v. Central States, Se. & Sw. Areas Health & Welfare Fund*, 851 F. Supp. 1250, 1257 (N.D. Ind. 1994).

### 2. State Law Doctrines Preempted By ERISA

After recovering from the third-party, Ms. Witcher refused to reimburse Central States based upon her attorney's assertion that the "make whole" defense applied regarding Central States' subrogation lien. Application of the make-whole doctrine would mean that Central States would not be permitted to enforce its contractual right to reimbursement unless Ms. Witcher were

first made whole, that is, fully compensated for her injuries. *See* 16 Lee R. Russ et. al., *Couch on Insurance* § 223:134 (3d ed. 2000).

The Eighth Circuit Court of Appeals has recognized that:

> [a]mong the primary purposes of ERISA is to ensure the integrity of written plans and to protect the expectations of participants and beneficiaries. *See, e.g., United McGill Corp. v. Stinnett,* 154 F.3d 168, 172 (4th Cir. 1998); *Duggan v. Hobbs,* 99 F.3d 307, 309-310 (9th Cir. 1996). Ordinarily, courts are to enforce the plain language of an ERISA plan "in accordance with 'its literal and natural meaning.'" *United McGill,* 154 F.3d at 172 (quoting *Health Cost Controls v. Isbell,* 139 F.3d 1070, 1072 (6th Cir. 1997)). We therefore do not apply common law theories to alter the express terms of a written plan.

*Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 838 (8th Cir. 2007).

Specifically, the Eighth Circuit held in *Waller v. Hornel Foods Corporation* that ERISA preempts any state law, including but not limited to the make-whole doctrine at issue in that case, that would otherwise override the subrogation provision in a self-insured plan. 120 F.3d 138, 139-40 (8th Cir. 1997) (citing *FMC Corp. v. Holliday,* 498 U.S. 52 (1990)). "A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Waller*, 120 F.3d at 140 (citing *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 511 (1981); *John Morrell & Co. v. United Food & Commercial Workers Int'l Union,* 37 F.3d 1302, 1303-04 (8th Cir. 1994), *cert. denied,* 515 U.S. 1105 (1995)); *see also Shank*, 500 F.3d at 837-38 ("*Waller* recognized that the make-whole doctrine originated in the law of insurance, where the overriding purpose of an insurance policy is to fully compensate the insured in case of loss, but that many ERISA-regulated benefit plans do not share that purpose. We thus concluded that the make-whole doctrine does not carry over from the insurance context to ERISA."); *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Scott*, 27 F. Supp. 2d 1166, 1173 (W.D. Ark. 1998) (same).

In *Stillmunkes v. Hy-Vee Employee Benefit Plan and Trust*, 127 F.3d 767, 770-71 (8th Cir. 1997), the Eighth Circuit determined that the common fund doctrine in federal common law was inapplicable in that ERISA case. Specifically, because a provision of the bankruptcy code addressed attorneys' fees and expenses, the common fund doctrine did not apply and did not require the reduction of an ERISA plan's reimbursement claim by a proportionate share of attorneys' fees and expenses incurred in the lawsuit giving rise to the settlement from which the reimbursement claim originated. In reaching this decision, the Eighth Circuit reconciled its decision in *Stillmunkes* with its decision in *Waller*. The Eighth Circuit observed that, in *Waller*, the "court relied on federal common law to address the issue of attorneys' fees and expenses where both ERISA and the individual ERISA plan were silent." *Id.*, at 770 n.7.

Central States' Plans at issue in this litigation are self-funded employee benefit plans (Dkt. No. 14-1, ¶¶ 23, 36). Based on controlling law, this Court determines that the language of Central States' Plans controls the outcome of this dispute.

### 3. Review Of Decision

In response to Central States' motion for summary judgment, Mr. Witcher contends that his original suit was for unjust enrichment (Dkt. No. 16, ¶ 1). He claims that Central States "unjustly accepted over $10,000.00 worth of premiums that were misused to contribute to an alleged subrogation lien." (*Id.*). He further contends that his case is distinguishable from *Stillmunkes* and *Waller* (*Id.*, ¶ 2). Mr. Witcher claims that, unlike in those two cases, the issue here is whether Central States "had the right to collect premiums and designate those funds to be applied to a purported subrogation lien against Plaintiff for payments made on behalf of his spouse." (*Id.*). He maintains that Central States' decision demonstrates an abuse of discretion and fails the reasonable basis test (*Id.*). He maintains that Central States' "decision to suspend

coverage under the Retiree Plan is exactly why Plaintiff should be reimbursed for all premiums paid during the time of this unilateral suspension." (*Id.*, ¶ 3).

To the extent that Mr. Witcher now contends that he asserts an unjust enrichment claim against Central States, his amended complaint does not specifically state this claim (Dkt. No. 3). Instead, in his amended complaint, he purports to bring a claim under § 502(a)(1)(B) of ERISA (Dkt. No. 3, ¶ 8). Even if his amended complaint could be construed to state an unjust enrichment claim, such a claim would be preempted.

The Eighth Circuit has determined that:

> [c]onsistent with the decision to create a comprehensive, uniform federal scheme, Congress drafted ERISA's preemption clause in broad terms . . . . Congress preempted "all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The United States Supreme Court has concluded that suits under section 502(a) of ERISA present a federal question for purposes of federal court jurisdiction . . . . Causes of action within the scope of, or that relate to, the civil enforcement provisions of 502(a) are removeable to federal court despite the fact the claims are couched in terms of state law . . . . Not only does this complete preemption confer federal jurisdiction, it also limits claims and remedies exclusively to those provided by section 502(a) . . . .

*Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir. 1999) (internal citations omitted).

To the extent that Mr. Witcher maintains that *Waller* and *Stillmunkes* are distinguishable, he offers no convincing argument on this point. The Court fails to see a basis on which to distinguish Mr. Witcher's claim and except it from the legal principles applied in *Waller* and *Stillmunkes*. "A subrogation provision affects the level of benefits conferred by the plan, and ERISA leaves that issue to the private parties creating the plan." *Waller*, 120 F.3d at 140. Like in *Waller*, this case "turns solely upon the proper interpretation of the Plan's subrogation provision." *Id*. Mr. Witcher makes no effort to argue his case based upon the provisions relied upon by Central States.

16

The Court has reviewed the language cited by Central States in its letters sent to Mr. Witcher on May 26, 2011, and August 22, 2016 (Dkt. Nos. 13-4; 13-6). The Court also has reviewed the entire administrative record submitted in this case (Dkt. No. 13). Central States sent the May 26, 2011, letter, along with pertinent provisions of the Active Plan Document, to explain its decision and the basis for that decision in the Active Plan Document language (Dkt. No. 13-4). Central States sent the August 22, 2016, letter after Mr. Witcher's appeal (Dkt. No. 13-6). In the August 22, 2016, letter, Central States cited provisions in the Retiree Plan applicable to its actions (*Id.*).

The Court has considered the five factors that bear on the reasonableness of Central States' interpretation of this language: (1) whether the interpretation contradicts the plan's clear language; (2) whether the interpretation renders any plan language internally inconsistent or meaningless; (3) whether the interpretation is consistent with earlier interpretations; (4) whether the interpretation is consistent with the plan's goals; and (5) whether the plan satisfies ERISA requirements. *Kennedy,* 31 F.3d at 609; *Finley,* 957 F.2d at 621.

As a part of its review, the Court has considered that, under ERISA, when a plan administrator gives an adverse benefit determination, it must provide a notice to the plan member stating "the specific reasons for such denial, written in a manner calculated to be understood by the participant . . . ." 29 U.S.C. § 1133(1); *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (citing 29 U.S.C. § 1133). "The purpose of this requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." *DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999). The Eighth Circuit Court of Appeals has held that plan trustees must "briefly state the facts of the case and the rationale for their decision," *Brumm v. Bert Bell NFL Retirement Plan,* 995 F.2d 1433,

1436 (8th Cir.1993) (internal quotation omitted), and the court has refused to allow claimants "to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation," *Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir.1998). The substance of a notice under § 1133 is defined by 29 C.F.R. § 2560.5031–1(g), the applicable federal regulation for the content required in adverse benefit determinations. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 943 n.9 (8th Cir. 2010).

Here, the Court determines that the notification of an adverse benefit determination was sufficient to comply with ERISA's requirements. Further, Mr. Witcher does not argue and has not shown that the information Central States provided was so insufficient that the notice failed to provide him with an understanding of Central States' decision. Mr. Witcher makes no argument with respect to this issue or any of the five factors the Court is to consider.

There are no disputed facts in this case with respect to Central States' handling of this matter (Dkt. No. 14-1, ¶¶ 41-59). There are no disputed facts in this case with respect to the Plan language that controls (*Id.*, ¶¶ 10-40). Based upon this Court's review, Central States did not abuse its discretion in construing the applicable terms and denying Mr. Witcher's administrative appeal for reimbursement of his Retiree Plan premiums paid during the period of time that his coverage with Central States was suspended due to Central States' subrogation lien.

## IV. Conclusion

For these reasons, the Court grants summary judgment in favor of Central States on Mr. Witcher's claims and dismisses with prejudice Mr. Witcher's claims.

It is so ordered, this the 17th day of October, 2019.

_____
Kristine G. Baker
United States District Judge